IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRIS ISENGARD,

       Plaintiff,

vs.                                      No. CIV 08-0300 JB/RLP

NEW MEXICO PUBLIC EDUCATION
DEPARTMENT, DIVISION OF VOCATIONAL
REHABILITATION, GARY BEENE,
CELESTINO JARAMILLO, and GARY
CORDOVA, in their individual capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Gary Beene's Motion for Partial

Summary Judgment on Qualified Immunity Grounds, filed February 27, 2009 (Doc. 63)("Motion").

The Court held a hearing on July 16, 2009.  The primary issue is whether Defendant Gary Beene is

entitled to qualified immunity protection from the Plaintiff Chris Isengard's third claim of violation

of his liberty interest alleged in the Complaint.  Because Isengard has not met his burden to show

that Beene deprived him of a clearly established liberty interest protected by the Fourteenth

Amendment to the United States Constitution, the Court will grant Beene's motion and dismiss

Isengard's third claim against Beene, as he is entitled to qualified immunity.

## FACTUAL BACKGROUND

Isengard was an independent contractor for the New Mexico Public Education Department's

Division of Vocational Rehabilitation ("DVR") from January 1999 to October 2006.  See Motion

at 1.  Pursuant to his contract with the state, he was responsible for providing administrative support

for the New Mexico State Independent Living Council ("SILC") and effectively served as that

body's executive director.  See State of New Mexico Department of Education Division of

Vocational Rehabilitation Professional Services Contract #05-644-1000-0019 at 1 (dated October

4, 2004), filed October 15, 2008 (Doc. 43-3)("Contract").  In return, he received payment for his

services and reimbursement for expenses that he paid out as the SILC's administrator.  See id. at 2.

The SILC oversees the implementation of the State Independent Living Plan, which New

Mexico adopts through approval of the Chair of the SILC and the council's two ex officio members.

See Affidavit of Gary Beene ¶ 6, at 2 (executed February 27, 2009)(Doc. 63-2)("Beene Aff.").  The

state is required to maintain the SILC as a condition of receiving federal funding.  The governor

appoints twelve of its members.  Isengard describes the SILC as "an independent council of citizens

that provided their input to the State on the State's development of policies concerning disabled

individuals." See Statement of Chris Isengard ¶ 5(e) at 8-9 (executed May 28, 2009), filed May 28,

2009 (Doc. 73-2)("Isengard St.").  When Isengard served as executive director of the SILC under

contract with the DVR, he paid the SILC members and would submit reimbursement requests for

those expenses to the State of New Mexico.  See id.  According to SILC's website, it is a "non-

governmental, consumer controlled organization which develops, monitors, and evaluates the

federally funded State Plan for Independent Living in the state of New Mexico . . . ." See Plaintiff's

Response in Opposition to Defendant Beene's Motion for Partial Summary Judgment on Qualified

Immunity Grounds at 3, filed May 28, 2009 ("Pl. Response")(citing nmsilc.org).  The Assistant

Cabinet Secretary for the DVR and the Director of the New Mexico Commission for the Blind serve

as the ex officio members of the SILC.  See Affidavit of John S. Stiff, Esq. Exhibit A, Office of

Inspector General Audit Report  at 5 (dated October 10, 2006)(filed October 15, 2008)(Doc. 43-

2)("OIG Audit").  Beene was the Assistant Cabinet Secretary for the DVR from June 2005 to

October 2008.  See Beene Aff. ¶ 1, at 1.

Isengard's contract with the DVR provided that either party could terminate it "for any reason whatsoever upon written notice delivered to the other party at least 10 days prior to the intended date of termination."  <u>See</u> DVR's Motion for Partial Judgment on the Pleadings Exhibit A, State of New Mexico Department of Education Division of Vocational Rehabilitation Professional Services Contract at 3 (signed Sept. 10, 2004), filed Jan. 20, 2009 (Doc. 56-2). The DVR notified Isengard by written notice on October 6, 2006 that his contract was terminated effective October 20, 2006.  <u>See</u> Motion at 4.  Isengard received notice of the termination of his contract by registered mail on October 9, 2006.  <u>See</u> Isengard St. ¶ 4, at 2.

On October 10, 2006, the Public Education Department's Office of Inspector General ("OIG") completed its audit report of Isengard's contract with the DVR.  <u>See</u> OIG Audit at 1.  Beene made the initial decision to review Isengard's contract and later determined that assistance was needed from the OIG, which led to the actual audit.  <u>See</u> Answer to Defendants New Mexico Public Education Department, Division of Vocational Rehabilitation, Gary Beene and Celestino Jaramillo to Plaintiff's First Set of Interrogatories and Responses to Plaintiff's First Set of Requests for Production at 6, filed February 27, 2009 (Doc. 63-2);  Pl. Response, Exhibit 3 at 2  (Doc. 73-3). Beene had no input, however, regarding the content or the wording of the OIG's audit report.  <u>See</u> Beene Aff. ¶ 3, at 1.

The audit had three objectives: (i) to determine if all the money the DVR paid to Isengard was accounted for;  (ii) to determine if Isengard had adequate documentation to support all expenditures under the contract; and (iii) to determine if all of the expenditures for which Isengard was reimbursed were reasonable, allowable, and in compliance with applicable laws and regulations. <u>See</u> OIG Audit at 2.  The OIG reported in its audit that, out of $220,500.00 in payments under Isengard's contract, it found "more than $77,000 in unspent funds, expenditures for which [the

Plaintiff] did not provide adequate documentation, and questioned costs that appeared not allowable under State and/or Federal laws and regulations."  OIG Audit at 4.  Isengard contends that the conclusion was ultimately found to be in error. See Isengard St. ¶17 at 16.  Based on the OIG's findings, however, the audit recommended that Isengard "either produce documentation required by law to establish the reasonableness and necessity of the amounts claimed, or make a refund payment to the [DVR]."  OIG Audit at 4.

Isengard contends that the OIG Audit contains numerous false and stigmatizing statements, including that: (i) he failed to maintain documentation which supported more than $77,000.00 in claims for reimbursement;[1] (ii) the maintenance of such records was an essential part of business practice, that Isengard had an obligation to maintain them and failed to do so, and that he could not provide any documentation for more than $16,000.00 in expenditures; (iii) Isengard violated the Assurances Contract Administration Agreement; (iv) because Isengard had represented to DVR that he was uniquely qualified to provide Administrative support services to the SILC, his failure to maintain adequate accounting records is difficult to explain; (v) Isengard failed to cooperate with the auditor during the course of the audit; (vi) Isengard sought and obtained reimbursements for $46,025.00 in expenditures not allowed by the terms of his contract, by State law, or by federal rules; (vii) Isengard was in violation of the law and delinquent in his responsibility as a steward of public money; (viii) Isengard failed to pay attention to legal requirements; (ix) Isengard improperly sought reimbursement for an excessive charge for New Mexico Gross Receipts Tax; and (x) Isengard may have violated criminal laws.  See Pl. Response at 8-9 (internal quotations omitted).

Beene discussed the OIG Audit and/or the reasons for terminating Isengard's contract with:

---

[1] Isengard notes that the DVR ultimately concluded that he owed $993.95, not $77,000.00. See Pl. Response at 8 n.4.

(i) DVR staff; (ii) Gary Haug, who replaced Isengard; (iii) Public Education Department ("PED")

officials; (iv) the individuals from the Office of Inspector General who conducted the audit; (v) the

SILC; (vi)  his wife, Carla Beene; and (vii) Terry Brigance, a mutual friend Beene shared with

Isengard.  See Beene Aff. ¶ 5, at 2.  Beene's notes show that, on September 14, 2006, he "shared

detailed information with Rebecca [Holland] regarding the preliminary findings of the the Plaintiff

audit."  Pl. Response Exhibit 6 at 5, filed May 28, 2009 (Doc. 73-3).  See Pl. Response Exhibit 1 at

3-4 (Doc. 73-2).  At that time, Holland served on the executive committee of the SILC.[2]  On

October, 4, 2006, Beene "showed [Holland and Vince Montano] the draft of the Isengard's audit

[and] went over all 5 findings [and] [r]eviewed some of the items from the spreadsheet."  Pl.

Response Exhibit 7 at 6 (Doc. 73-3).  See Pl. Response Exhibit 1 at 4.  Vince Montano was the head

of the SILC at that time.  See Pl. Response Exhibit 1 at 4.  Beene announced the findings of the OIG

Audit at a meeting of the SILC on November 20, 2006.  See Pl. Response Exhibit 8, Minutes of the

SILC at 7 (Doc. 73-3).  In addition to SILC members and DVR staff, two private citizens, Kalee

Brown and Tim Carver, both employees of the San Juan Independence Center, as well as two

interpreters and a stenographer were present at the meeting. See id.

     Isengard also disclosed information about the OIG Audit and his subsequent termination. He

sent an electronic-mail transmission to the full membership of SILC on August 2, 2006, indicating

that an audit was underway.  The electronic-mail transmission did not reveal any of the defamatory

statements allegedly contained in the OIG Audit.  See Motion Exhibit F, email dated August 2, 2006

---

[2] Isengard contends that, in September of 2006, Holland had resigned from the SILC and was
no longer a member of that council.  See Isengard St. ¶ 12, at 7.  Holland, however, states that she
never resigned as a member of the SILC.  See Declaration of Rebecca Holland ¶ 3, at 1 (dated June
16, 2009), filed June 18, 2009 (Doc. 78-2).  This conflict in the testimony, however, does not
determine whether a genuine issue of material fact exists.

at 12-14 (Doc. 63-2).   Another electronic-mail transmission sent on August 1, 2006, to the Independent Living Resource Center also references the review of his contract.  The electronic-mail transmission did not disclose any defamatory statements or information contained in the OIG Audit. <u>See</u> Motion Exhibit G, email dated August 1, 2006 at 15 (Doc. 63-2).  Isengard also wrote an email on October 9, 2006, to SILC members, stating that his contract had been terminated, that the audit report was "quite negative" and "fundamentally flawed," and that he would be contacting SILC members about costs questioned in the OIG Audit, and that he was "disappointed with the way in which the audit was conducted."  <u>See</u> Motion Exhibit B, email dated October 9, 2006 at 4 (Doc. 63-2).  The electronic-mail transmission does not refer to any of the stigmatizing statements contained in the OIG Audit.  <u>See id.</u>  Isengard also discussed the audit and his termination with Brigance, who was not at the time employed by the state government.  <u>See</u> Motion ¶ 10 at 6; Response ¶ at 5. According to Isengard, he only discussed: (i) that the information in the audit regarding his alleged failure to submit documentation to support expenditures were not true, and that Beene and Jaramillo knew that those statements were untrue; (ii) that the information in the audit regarding his having improperly billed for personal travel expenses for spouses of SILC members was untrue because those spouses served as attendants for those members and charges for their travel were therefore proper expenses; and (iii) that the information in the audit about Isengard's use of his personal credit card for SILC expenses being improper was untrue because his Request for Proposal for the SILC support contract specifically referenced that he would use his personal credit card for this purpose and because no law prohibited such use.  <u>See</u> Isengard St. ¶ 5a at 7.

Isengard also talked about the audit with Jim Crews, an employee of DVR, and the discussion was limited to the matters he discussed with Brigance.  <u>See id.</u> ¶ 5b at 8.  Isengard told his bookkeeper, Darla Tresise, that the audit was highly inaccurate, that he had submitted the

documents which the audit report stated he had failed to submit, and that he asked Tresise questions whether she recalled for what certain specific reimbursement checks had been paid.  He did not give her a copy of the OIG Audit, nor did he discuss any other matters concerning the audit.  <u>See</u> Isengard St. ¶ 5c at 8.  Isengard spoke with representatives of centers for independent living, the University of New Mexico Center for Development and Disability, and other recipients of SILC funding to get documentation of expenditures stated and questioned in the OIG Audit.  <u>See</u> Isengard St. ¶¶ 6(a)-(j), at 4-6.  He also spoke with representatives of the New Mexico Taxation and Revenue Department about the OIG Audit's finding that he had improperly sought reimbursement for gross receipts tax, <u>see</u> <u>id.</u> ¶ 10 at 7, and with friends and family in general terms, <u>see</u> <u>id.</u> ¶ 11 at 7.

## PROCEDURAL BACKGROUND

This case concerns a suit for breach of contract and violation of civil rights that Isengard has brought against DVR, Beene,  Jaramillo, and Gary Cordova in their individual capacities.  Isengard originally brought this lawsuit in state court, alleging three counts: (i) breach of contract; (ii) violation of his First-Amendment rights; and (iii) violation of his liberty interest.  <u>See</u> Complaint for Breach of Contract and Violation of Civil Rights, filed in state court on March 5, 2008 and filed in federal court on March 20, 2008  (Doc. 1-2)("Complaint").  On March 20, 2009, the Defendants removed the case to federal court.  <u>See</u> Notice of Removal at 1, filed March 20, 2009 (Doc. 1).  The civil-rights claims against Jaramillo and Cordova have been previously dismissed through stipulation.  <u>See</u> Doc. 62 and Doc. 72.  More background on the lawsuit is set forth in the Court's earlier opinion.  <u>See</u> <u>Isengard  v. New Mexico Public Educ. Dep't</u>, 2009 WL 2105947, at **1-2 (D.N.M.)(Browning, J.).

Beene now  moves for partial summary judgment on the liberty-interest due-process claim asserted in Count III of the Complaint.  Beene contends that he is entitled to qualified immunity

from the claim because Isengard cannot demonstrate that Beene deprived him of a liberty interest that the Fourteenth Amendment protects.  See Motion at 1.

Beene argues that Isengard cannot satisfy the "heavy two-part burden" required to overcome qualified immunity.  See Motion at 6 (citing Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007)(internal quotations omitted)).  First, Beene contends that Isengard will be unable to satisfy the first prong of the qualified immunity analysis because he cannot demonstrate that Beene violated Isengard's Fourteenth Amendment rights.  See Motion at 7.  With regards to statements disclosed to members of the DVR staff, Haug, PED officials, the individuals from the Office of Inspector General who conducted the audit, and the SILC, Beene contends that Isengard will be unable to establish the fourth element of the demonstration of a deprivation of liberty: the requirement that the relevant stigmatizing statements about Isengard were published to the public. See id. at 7 n.1 (citing Renaud v. Wyoming Dep't of Family Servs., 203 F.3d 723, 727-28 (10th Cir. 2000)).  Beene contends that intra-government disclosures do not qualify as publication for purposes of a liberty-interest due-process claim, and therefore the information Beene disclosed to DVR staff, PED officials, members of the SILC, and Haug is not considered publication.  See id.  Beene's counsel, Mark Baker, argued in the hearing on this matter that the SILC should be considered a state governmental body because SILC is "so closely tied to state government" in that: (i) the governor appoints SILC members; (ii) federal statutes require the State of New Mexico to create the SILC as a condition of receiving federal funding; and (iii) the Open Meetings Act and the Per Diem Act govern the SILC's operations and meetings.  See Hearing Transcript at 7:5-12 (taken July 16, 2009)("Hearing Tr.")(Baker).

Beene also contends that any disclosures regarding the OIG Audit or the termination of Isengard's contract made to his wife, Brigance, Haug,  Brown, Carver, or the two stenographers at

the SILC meeting  are insufficient to demonstrate that Isengard was deprived of his liberty interest, because he cannot establish that any of these disclosures foreclosed employment opportunities for Isengard or injured him in any way.  See Reply in Support of Defendant Gary Beene's Motion for Partial Summary Judgment on Qualified Immunity Grounds at 10-15, filed June 18, 2009 (Doc. 78)("Reply").

Beene further contends that Isengard will be unable to satisfy the second prong of the qualified immunity analysis because Isengard must do more than merely identify a clearly established legal test and then allege Beene violated it.  See id. at 8 (citing Walker v. City of Orem, 451 F.3d 1139, 1151 (10th Cir. 2006).  Beene contends that Isengard cannot provide case law on point that would have led a reasonable person in Beene's position to understand that his conduct was unlawful.  See Reply at 9.

Isengard maintains that the statements in the OIG Audit are stigmatizing and contain false information.  See Pl. Response at 7-8.  He asserts that Beene is not entitled to qualified immunity because he communicated these false and stigmatizing statements to private, non-governmental individuals, including the SILC members and executive committee, Haug, Beene's wife, Brigance, Brown, Carver, and the stenographer and interpreters at the November 20, 2006 SILC meeting.  See Pl. Response at 10.  Isengard argues that the statements shared with the SILC constitute publication because the SILC is not a state government entity and because information disseminated to members of that non-governmental organization constitute publication outside state government. See id. at 13-14.  In the hearing before the Court, Isengard's counsel, attorney Duff Westbrook, argued that, though he believes it is neither a state nor federal entity, if the SILC is attached to any government, it would be attached to the federal government, because the federal government mandates its creation.  See Hearing Tr. at 34:8-12 (Westbrook).  Isengard further maintains that, because of

Beene's stigmatizing, false statements, he has suffered injury.  <u>See</u> Isengard St. ¶15 at 9.  He states

that he has been denied interviews for positions in the disability-rights community and he attributes

those loss of employment opportunities to Beene's statements.  <u>See id.</u>  Isengard urges the Court to

deny Beene's motion for partial summary judgment because he is not entitled to qualified immunity.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an

absence of evidence to support the nonmoving party's case." <u>Bacchus Indus., Inc. v. Arvin Indus.,</u>

<u>Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). <u>See</u> <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986).

Once the movant meets this burden, rule 56(e) of the Federal Rules of Civil Procedure

requires the nonmoving party to designate specific facts showing that there is a genuine issue for

trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 324; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

256 (1986); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving

party may not rest on its pleadings but must set forth specific facts showing that there is a genuine

issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal

quotation omitted); <u>Otteson v. United States</u>, 622 F.2d 516, 519 (10th Cir. 1980)("However, once

a properly supported summary judgment motion is made, the opposing party may not rest on the

allegations contained in his complaint, but must respond with specific facts showing the existence

of a genuine factual issue to be tried.")(internal quotation omitted).  The party opposing a motion

for summary judgment must "set forth specific facts showing that there is a genuine issue for trial

as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990). "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 U.S. Dist. LEXIS 45838, at * 1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 U.S. Dist. LEXIS 45838, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. The mere existence of a scintilla of evidence will not avoid summary judgment. See Vitkus v. Beatrice Co., 11 F.3d at 1539. There must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251; Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence

is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."
Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where the record
taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
(1986).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise
their discretion and the related public interest in encouraging the vigorous exercise of official
authority." Harlow v. Fitzgerald, 457 U.S. at 807.  Qualified immunity "protects federal and state
officials from liability for discretionary functions, and from 'the unwarranted demands customarily
imposed upon those defending a long drawn-out lawsuit.'" Royal v. City of Albuquerque, No. Civ.
08-0181, 2009 U.S. Dist. LEXIS 45670, at *29 (D.N.M. Apr. 28, 2009)(quoting Siegert v. Gilley,
500 U.S. 226, 232 (1991)).  Issues of qualified immunity are best resolved at the "earliest possible
stage in litigation." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)(quoting Hunter v. Bryant, 502
U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does
not violate clearly established statutory or constitutional rights of which a reasonable person would
have known." Pearson v. Callahan, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800,
818 (1982)).  The United States Court of Appeals for the Tenth Circuit has stated:

> When a defendant asserts qualified immunity at summary judgment, the
> responsibility shifts to the plaintiff to meet a "heavy two-part burden," [Medina v.
> Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)] (internal quotation marks omitted),
> demonstrating, first, that the defendant's actions violated a constitutional or statutory
> right and, second, that the right at issue was clearly established at the time of the
> defendant's allegedly unlawful conduct.  In assessing whether the right was clearly
> established, we ask whether the right was sufficiently clear that a reasonable

> government officer in the defendant's shoes would understand that what he or she did violated that right. If the plaintiff fails to satisfy either part of the two-part inquiry, we must grant the defendant qualified immunity.

Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).

Qualified immunity shields state officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818.  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." Zweibon v. Mitchell, 720 F.2d 162, 172-173 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Strepka v. Miller, 2001 WL 1475058, at * 5 (10th Cir. 2001)(citing Currier v. Doran, 242 F.3d at 923).  See Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As the Supreme Court has observed, it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. at 640.  However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 635.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a

qualified-immunity defense.  In Pearson v. Callahan, 129 S. Ct. 808 (2009), the Supreme Court held

that, "while the sequence set forth [in Saucier v. Katz, 533 U.S. 194 (2001)] is often appropriate, it

should no longer be regarded as mandatory."  129 S. Ct. at 818.  Rather, lower courts "should be

permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances of the particular case at

hand."  Id.  The Supreme Court also noted that, while no longer mandatory, the protocol outlined

in Saucier v. Katz would often be beneficial.  See Pearson v. Callahan, 129 S. Ct. at 819.

## LAW REGARDING THE FOURTEENTH AMENDMENT LIBERTY-INTEREST DUE-PROCESS CLAIM

The Tenth Circuit has delineated a four-part test that a plaintiff must satisfy to demonstrate

a deprivation of liberty:

> (i) to be actionable, the statements must impugn the good name,
> reputation, honor, or integrity of the employee; (ii) the statements
> must be false; (iii) the statements must occur in the course of
> terminating the employee or must foreclose other employment
> opportunities; and (iv) the statements must be published. These
> elements are not disjunctive, all must be satisfied to demonstrate
> deprivation of the liberty interest.

Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994).  The Tenth Circuit, in Renaud v. Wyoming

Dep't of Family Services, 203 F.3d 723 (10th Cir. 2000), later explained that "the Workman court

did not intend to create a test under which a liberty interest might be infringed by any defamatory

statement that might foreclose future employment." Id., 203 F.3d at  728 n.1.  The plaintiff must

show a tangible injury to support a liberty-interest due-process claim.  See Phelps v. Wichita Eagle-

Beacon, 886 F.2d 1262, 1268-69 (10th Cir. 1989)(holding that future harm to prospective

relationships and damages to prospective employment opportunities are too intangible to constitute

a deprivation of a liberty interest).

-14-

Damage to one's reputation alone is not enough to implicate due-process protections.  See Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004).  When a plaintiff asserts that the government has impugned his good name, reputation, honor, or integrity, the Tenth Circuit applies a "stigma-plus" standard, meaning that the statements the plaintiff contends demonstrate a deprivation of liberty (i) must be sufficiently derogatory to injure his or her reputation, capable of being proved false, and the plaintiff must assert they are false, and (ii) the plaintiff must show that the statements caused a governmentally imposed burden that significantly altered his status as a matter of law.  See Gwinn v. Awmiller, 354 F.3d at 1216; see also Ewers v. Bd. of County Comm'rs. of Curry County, 802 F.2d 1242, 1247 (10th Cir. 1986)(stating that to establish a claim of deprivation of a liberty interest in reputation under Section 1983, plaintiff must allege stigma-plus harm to some other tangible interest such as employment).  De minimis harm is not enough to implicate the plaintiff's liberty interests.  See Ingraham v. Wright, 430 U.S. 651, 674 (1977)("There is, of course, a de minimis level of imposition with which the Constitution is not concerned"); Doe v. Bagan, 41 F.3d 571, 575 (10th Cir. 1994).

To state a stigma-plus liberty-interest due process claim, a plaintiff must also establish that the allegedly stigmatizing statements were published.  See Renauld v. Wyoming Dep't of Family Servs., 203 F.3d 723, 727 (10th Cir. 2000)(quoting Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994)).  To satisfy the publication requirement, the plaintiff must plead that the allegedly false and stigmatizing statements were made public.  See Bell v. Bd. of Educ. of the Albuquerque Pub. Schs., 2008 U.S. Dist. LEXIS 69065, at *54 (citing Orozco v. County of Monterey, 941 F. Supp. 930, 939 (N.D. Ca. 1996)); Rich v. Secretary of Army, 735 F.2d 1220, 1227 (10th Cir. 1984)("To impinge on the plaintiff's liberty interest, the stigmatizing information must be made public by the offending governmental entity.").

In Asbill v. Housing Authority of Choctaw Nation, 726 F.2d 1499 (10th Cir. 1984), the Tenth Circuit stated: "[I]ntra-governmental dissemination, by itself, falls short of the Supreme Court's notion of publication: to be made public." Id., 726 F.2d at 1503 (internal quotation omitted). The Tenth Circuit has since consistently held that intra-governmental disclosure of information does not constitute publication in the context of a liberty interest claim.  See Harris v. Blake, 798 F.2d 419, 422 (10th Cir. 1986)(stating that a letter with allegedly stigmatizing statements placed in plaintiff's academic file was not published because it was not disseminated to anyone not associated with the academic institution); Lollis v. City of Eufaulfa, 249 Fed. Appx. 20, 25 (10th Cir. 2007)(holding that summary judgment for the defendants was appropriate because there was no evidence that allegedly stigmatizing statements made in police incident reports were published outside of the police department or the city council); McCarty v. City of Bartlesville, 8 Fed. Appx. 867, 874 (10th Cir. 2001) (finding that a discussion of the case with the district attorney was intra-governmental dissemination and not publication); Custodio v. Parker, 65 F.3d 178, 1995 U.S. App. LEXIS 25235, at *12 (10th Cir. 1995)(holding that the liberty-interest claim was properly dismissed because statements referring to plaintiff's termination made to plaintiff's superiors constituted intra-government dissemination and not publication).

## ANALYSIS

Beene argues that he is entitled to qualified immunity protection from Isengard's liberty-interest claim because Isengard has not met his burden to show that Beene deprived him of a liberty interest protected by the Fourteenth Amendment to the United States Constitution.  Viewing the facts in the light most favorable to Isengard, the Court finds that he has not presented sufficient evidence to satisfy the four-part test which he must satisfy to demonstrate that Beene violated his liberty interest. The Court finds, therefore, that Beene is entitled to qualified immunity protection

and partial summary judgment as a matter of law on Isengard's third claim.

Because Beene has asserted in his motion for partial summary judgment that he is entitled to qualified immunity, the burden shifts to Isengard to meet the "heavy two-part burden" that the Tenth Circuit has set forth.  See Casey v. W. Las Vegas Indep. Sch. Dist., 472 F.3d at 1327 (quoting Medina v. Cram, 252 F.3d at 1128).  Isengard must demonstrate that Beene's actions violated a constitutional or statutory right and, second, that the right at issue was clearly established at the time of Beene's allegedly unlawful conduct.  See id.

## I.    ISENGARD HAS NOT PRESENTED SUFFICIENT EVIDENCE THAT BEENE VIOLATED HIS CONSTITUTIONAL RIGHTS.

Isengard contends that Beene, using his position of authority as an official of the PED and DVR, deprived him of his liberty interest protected by the Fourteenth Amendment of the United States Constitution, when he "knowingly and maliciously published demonstratively false statements" that were injurious to his reputation in the community.  Complaint ¶ 42 at 8 (Doc. 1-2). To establish this constitutional right, Isengard must show that there is sufficient evidence to satisfy the four-part test: (i) the statements at issue impugned Isengard's good name, reputation, honor, or integrity; (ii) the statements were false; (iii) the statements must occur in the course of terminating the employee and must foreclose other employment opportunities; and (iv) the statements must be published.  See Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994).  Because the elements are not disjunctive, Isengard must satisfy all four elements to successfully demonstrate that he suffered a deprivation of his liberty interest. See Evers v. Regents of Univ. of Colo., 509 F.3d 1304, 1308 (10th Cir. 2007)

### A.    THE STATEMENTS BEENE MADE TO THE SILC DID NOT DEPRIVE ISENGARD OF HIS LIBERTY INTEREST.

Isengard contends that he was deprived of his liberty interest when Beene discussed the OIG

Audit results with the SILC.  The Court, therefore, assesses the statements contained in the OIG Audit that Beene allegedly discussed with the SILC executive committee members Holland and Montano, with the members of the SILC during their meeting on November 20, 2006, as well as discussions that he had with DVR staff, Haug, PED officials, and the OIG individuals who conducted the audit.  Viewing the evidence in the light most favorable to Isengard, the Court finds that he has presented sufficient evidence to establish genuine issues of fact on the first three elements but fails to show that the statements to these individuals constituted publication to the public, as required by the Supreme Court.  See Bishop v. Wood, 426 U.S. 341, 348 (1976).

1. **Isengard Presented Sufficient Evidence To Establish the First Three Elements Required To Demonstrate that the Statements to the SILC Deprived Him of His Liberty Interest.**

Isengard contends that the statements in the OIG Audit are stigmatizing and defamatory, and place his good name, reputation, and integrity at stake.  See Response at 8-9. The statements in the audit include findings that: (i) Isengard failed to maintain adequate accounting records, see OIG Audit at 18; (ii) his work logs contained errors evidencing poor professional care, see id. at 19; (iii) his expenditures were improper, which demonstrated that Isengard violated the law and was delinquent in stewardship of public money, see id. at 20; and (iv) he expended unnecessary funds and failed to apply New Mexico tax laws properly, see id. at 22.  The Court finds that Isengard has presented sufficient evidence that there is a genuine issue of material fact whether these statements could be viewed as stigmatizing and defamatory and has thus satisfied the first element of his claim.

Isengard also argues that these statements in the OIG Audit are false.  See Response at 8-9; Isengard St. ¶ 17 at 15-16.  According to Isengard, almost all of the audit's findings were subsequently withdrawn after Isengard presented documentation to the DVR.  See Isengard St. ¶ 17 at 16.  Beene contends that the OIG Audit questioned the costs that were not documented and

suggested that Isengard produce documentation required by law to establish the reasonableness of his expenditures.  See Motion ¶ 5 at 4.  The Court finds there to be a sufficient issue of material fact whether the statements in the OIG Audit are false statements made about Isengard or alternatively suggestions to the DVR about issues OIG identified regarding Isengard's work.  Accordingly, Isengard has satisfied the second element.

Isengard must also establish that the statements occurred in the course of terminating employment and foreclosed other employment opportunities.  The Court recognizes that neither party has argued that the OIG Audit did not lead to the termination of Isengard's contract.[3]  Isengard must still provide, however, evidence that the statements foreclosed other employment opportunities.  See Renaud v. Wyoming Dep't of Family Servs., 203 F.3d at 728 n.1.  Isengard states that, since October 2006, he has applied for several advertised jobs in the disability community, including Executive Director of Family Voices, Executive Director of New Mexico Voices for Children, and a management position with Home Instead Senior Care, and has not received an interview for any of the positions.  See Isengard St. ¶ 15 at 14.  The Court finds that Isengard has presented sufficient evidence to create a genuine factual issue with regard to injury caused by the statements Beene made to Holland and Montano, the SILC, DVR staff, PED officials, and the OIG, as these individuals play a pivotal role in the disability community and Isengard's lack of employment may be attributable to those discussions.

---

[3] Beene has not argued that the Court should not consider Isengard's contract to be employment.  The Court also sees no reason to draw that distinction.  There is a dispute between the parties whether Isengard was terminated at will, because his contract states "for any reason whatsoever," or whether he was terminated for cause.  The Court also does not reach at this time whether termination was at will or for cause, as it is irrelevant to determining whether the third element of the four-part test is satisfied.

### 2.    Isengard Has Not Presented Sufficient Evidence To Establish the Fourth Element of Publication Required To Demonstrate that the Statements to the SILC Deprived Him of His Liberty Interest.

Though Isengard has established the first three elements of the four-part test required to successfully demonstrate that he suffered a deprivation of his liberty interest when Beene made statements about the OIG Audit to the SILC, DVR staff, PED officials, and the OIG Audit individuals, the Court finds that Isengard has not established sufficient evidence that those statements were published.  As the Tenth Circuit has stated: "[I]ntra-governmental dissemination, by itself, falls short of the Supreme Court's notion of publication: to be made public."  Asbill v. Housing Authority of Choctaw Nation, 726 F.2d at 1503.

The Tenth Circuit case law which has developed around intra-governmental dissemination of statements suggests that publication must be more than discussions with employers or employees. See Custodio v. Parker, 65 F.3d 178, 1995 U.S. App. LEXIS 25235, at *12 (10th Cir. 1995)(holding that the liberty-interest claim was properly dismissed because statements referring to plaintiff's termination made to plaintiff's superiors constituted intra-government dissemination and not publication).  Instead, the courts look for evidence of a "public pronouncement" of stigmatizing statements.  See Six v. Henry, 42 F.3d 582, 585 (10th Cir. 1994 )(finding that because the statements at issue were not made in any public pronouncement, statements made to other governmental office personnel fell short of publication).  Here, Beene made statements regarding the OIG Audit and Isengard in front of the members of the SILC, the group that Isengard formerly led.  These statements were not made to the public, but rather were made internally to the very people that the outcome of the OIG Audit affected.  The Court finds that it is not reasonable to hold, nor does the case law suggest, that a governmental officer should be held liable for communicating necessary information to the internal membership of a governmentally created and controlled group.

-20-

Isengard argues that the SILC is not a part of the New Mexico state government because it does not exist under state law.  See Response at 14.  Isengard directs the Court's attention to 29 U.S.C. § 796d(a): "To be eligible to receive financial assistance under this chapter, each State shall establish a Statewide Independent Living Council.  The Council shall not be established as an entity within a State agency."  This language, however, neither proves nor disproves that the SILC is a state entity for the purpose of intra-governmental dissemination.

Neither the Supreme Court nor the Tenth Circuit have directly addressed whether a council, like the SILC, created by the State pursuant to a Federal statute, should be considered a governmental agency for the purpose of intra-governmental dissemination.  The courts have addressed, however, what constitutes state action for purposes of a § 1983 action for violation of the Fourteenth Amendment, which analysis the Court finds instructive in determining whether the SILC may be considered a state entity.[4]  The Supreme Court has found that, where there is such a "close nexus between the State and the challenged action," seemingly private behavior "may be fairly treated as that of the State itself."  Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974).  The Supreme Court has also found that, where there is a "largely overlapping identity" between an association and the State, the State is considered "pervasively entwined" with the association.  Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001).  In Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, the Supreme Court relied on the facts that an athletic association's governing board was dominated by public school officials, the revenue was derived from governmental funds, and the association carried out a function that

---

[4] The Court is not suggesting that there must be state action for there to be intra-governmental disclosure.  Rather, the Court finds the analysis for determining state action helpful in its analysis whether a body like the SILC should be treated as a governmental agency.

otherwise would have to be carried out by the state board of education.  See 531 U.S. at 296.[5]

According to the Tenth Circuit, "extensive state regulation, the receipt of substantial [government]

funds, and the performance of important public functions do not necessarily establish the kind of

symbiotic relationship between the government and a private entity that is required for state action."

Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1451 (10th Cir. 1995).

The SILC is funded by the government and performs an important government function.

According to Isengard, federal law mandates that the membership of the SILC include

representatives of DVR, representatives from the Commission of the Blind, representatives from

other state agencies that provide services for individuals with disabilities, a Center for Independent

Living director chosen by other Center for Independent Living directors in the state, a Native

American Rehabilitation program director,[6] and voting members who are persons with disabilities.

See Isengard St. ¶ 16 at 14.  The Governor of New Mexico appoints the SILC members.  See  Pl.

Response Exhibit 12 at 32, SILC Mission Statement.  The membership itself has a largely

overlapping identity with the state government.  Additionally, the SILC conducts their meetings in

accordance with the New Mexico Open Meetings Act, NMSA 1978 § 10-15-1 to-4, which governs

the activities of "any board, commission, administrative adjudicatory body, or other policymaking

---

[5] The Supreme Court in another case, however, held that there was no state action where a private school was extensively regulated by the state, received substantial governmental assistance, carried out an important societal function, and acted pursuant to state authority.  See Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982).  In Rendell-Baker v. Kohn, however, the government did not set up the private school, whereas here, the State of New Mexico creates the SILC.

[6] The 1992 Amendments to the Rehabilitation Act gave rise to funding for the Center for Independent Living programs and the Native American Rehabilitation programs. See 29 U.S.C. § 796. Centers for Independent Living organizations, which are government funded independent living rehabilitation services programs, are established throughout New Mexico and receive funding from the SILC Training and Development fund.  See Isengard St. ¶ 6 at 9.

body of any state agency, any agency or authority of any county, municipality, district, or any political subdivision." See Deposition of Gary Beene at 7 (taken Mar. 30, 2009), filed June 18, 2009 (Doc. 78-2)("Beene Depo."). SILC members are paid pursuant to the New Mexico Per Diem and Mileage Act, NMSA 1978 §§ 10-8-1 to -8, which establishes "rates for reimbursement for travel for public officers and employees." NMSA 1978 § 10-8-1; See Beene Depo. at 6.[7]  The Court finds these facts, taken in the aggregate, persuasive that the SILC could be considered governmental for the purpose of intra-governmental disseminations.

Isengard puts emphasis on the language of the SILC's website, which states:

> The Statewide Independent Living Council (SILC) of New Mexico is made up of representatives from around the state, the majority of which have disabilities, who are appointed by the Governor. It is a non-governmental, consumer controlled organization which develops, monitors, and evaluates the federally funded State Plan for Independent Living in the state of New Mexico, which promotes the Independent Living philosophy worldwide.

Pl. Response, Exhibit 12 at 32 (Doc. 73-3).  The author of that statement, Mark Cornett, the executive director of the SILC since January 2008, admits that he drafted the text that Isengard argues proves the SILC is non-governmental, and "[h]aving reviewed the statement, I actually do not consider it accurate. [D]escribing the SILC as 'non-governmental' is inconsistent with the fact that it is funded with public money."  Declaration of Mark Cornett at 10 (executed June 13, 2009), filed June 18, 2009 (Doc. 78-2).  The Court does not find the statement on the website determinative of the governmental status of the SILC.

---

[7] It is unclear from the evidence presented whether the SILC follows the New Mexico Open Meetings Act and the New Mexico Miles and Per Diem Act because the state requires it to do so or if it voluntarily does so because it is dealing with grant funds.  In any case, there is no dispute  that the SILC conducts itself in accordance with these state statutes.  That alone suggests it should be treated as a governmental entity, at least for purposes of deciding whether these were intra-governmental disclosures.

Because the Court finds that the SILC has a largely overlapping identity with the state government, the Court finds that the statements that Beene made to the SILC are not considered a publication, but rather intra-governmental dissemination. Isengard has thus not satisfied all four elements required to successfully demonstrate that he suffered a deprivation of his liberty interest.

## B. ISENGARD CANNOT ESTABLISH THAT STATEMENTS DISCLOSED TO PRIVATE INDIVIDUALS CAUSED HIM INJURY OR FORECLOSED FUTURE EMPLOYMENT OPPORTUNITIES.

Isengard has not presented sufficient evidence of specific facts establishing that he was injured by the disclosures made to certain private individuals to whom Beene spoke about Isengard. Isengard must show a tangible injury to support his stigma-plus liberty-interest due-process claim. See Phelps v. Wichita Eagle-Beacon, 886 F.2d at 1268-69. Allegations of de minimis harm are not enough. See Ingraham v. Wright, 430 U.S. at 674.

Isengard has not presented any statement Beene made to Beene's wife that was stigmatizing or defamatory, nor does he identify how she foreclosed future employment opportunities for him. Isengard cannot "rely merely on allegations" to support his liberty-interest claim, he must set out specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2). Moreover, Beene's wife gave a sworn affidavit in which she states that she never saw the OIG Audit nor did she discuss the contents of the report with Beene. See Affidavit of Carla Beene ¶3 at 8 (signed Feb. 27, 2009), filed February 27, 2009 (Doc. 63-2). Isengard has not brought forth specific facts establishing the required injury to establish a stigma-plus liberty-interest claim.

Isengard also did not bring forth sufficient evidence about the conversations Beene had with Brigance, the mutual friend of Beene and Isengard, to establish that he suffered injury or that those conversations foreclosed employment opportunities for him. Isengard does not allege that his friend, Brigance, took any steps to hinder his future employment in any way. Moreover, in Brigance's

-24-

sworn affidavit, he states that Beene informed him of the audit and the termination of Isengard's contract, but that the two did not discuss the situation in depth.  See Affidavit of Terry Brigance ¶2 at 10 (signed Feb. 25, 2009), filed February 27, 2009 (Doc. 63-2).  Additionally, Isengard told Brigance about the audit and his termination, which undercuts the claim that the statements harmed his reputation.  Without any evidence that there was injury caused by these conversations, they are insufficient to establish a violation of Isengard's liberty.

Isengard argues that, at the time Beene spoke to Haug, the man who replaced him at the SILC, he was an independent contractor with the DVR and not a member of the government.  Again, however, Isengard has put forth no evidence of how the discussion Beene had with Haug foreclosed any employment opportunities.  Haug was being offered Isengard's position.  It makes sense that he would need to be informed of the circumstances surrounding his new role.  It also is unclear how Haug could foreclose the only employment opportunity that he would be in a position to prevent Isengard from seeking -- employment with the SILC.  That opportunity had already been foreclosed before any conversations with Haug were had.

Isengard argues that the Court should deny summary judgment because two non-SILC members, Carver and Brown, attended the November 20, 2006 meeting in which the OIG Audit was discussed.  These two individuals are employed by a private independent living center in San Juan County.  Once again, Isengard asserts that these individuals were at the meeting and that they heard statements about the OIG Audit, but he does not assert that any injury or foreclosed employment opportunities resulted because of these two individuals.  Moreover, in Carver's affidavit, he states that he does not remember anyone saying anything negative about Isengard and he never saw the OIG Audit.  See Affidavit of Timothy Carver ¶¶ 2, 4, at 5-6 (signed Apr. 6, 2009), filed April 8, 2009 (Doc. 69-2).  In Brown's affidavit, she states the only thing she remembers is that an individual

named Chris Isengard no longer worked at SILC, see Affidavit of Kalee Brown ¶2, at 7 (signed Apr. 6, 2009), filed April 8, 2009 (Doc. 69-2).  These individuals did not see the audit, nor is there any evidence whether they could have foreclosed employment opportunities for Isengard.

Finally, Isengard contends he can recover on his liberty-interest due-process claim because there were interpreters and a stenographer present at the November 20, 2006 SILC meeting where Beene made statements regarding the OIG Audit.  The Court finds it unpersuasive that Isengard suffered injury because of the presence of individuals who are required to attend such meetings, to ensure compliance with the Open Meetings Act, by creating a record and facilitating communication with the disabled members of the SILC.  Isengard has presented no evidence that establishes a fact issue whether these individuals foreclosed employment opportunities for him.  Their presence, at most, caused him de minimis harm, with which the liberty interest protections of the Fourteenth Amendment are not concerned.  See Ingraham v. Wright, 430 U.S. at  674.

## II.   ISENGARD HAS NOT SHOWN THAT THE DISCLOSURES BEENE MADE VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.

The second prong of the "heavy two-part burden" Isengard must overcome to deny Beene the protection of qualified immunity is to show that Beene violated a clearly established right which at the time Beene made the disclosures was "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right."  Anderson v. Creighton, 483 U.S. at 640. The Tenth Circuit considers a right clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Medina v. City & County of Denver, 960 F.2d at 1498.

With regards to the statements Beene made to the SILC, there is no clearly established Supreme Court or Tenth Circuit precedent whether a council like the SILC constitutes a

governmental entity covered by intra-governmental dissemination protections.  As discussed previously, because neither the Supreme Court nor the Tenth Circuit have addressed this issue, the Court looked to the guidance of cases on state action.  Isengard contends that the Tenth Circuit in Asbill v. Housing Auth. of Choctaw Nation clearly established that governmental officials who publish stigmatizing, defamatory information outside of state government can be held liable for the deprivation of the affected individual's constitutionally protected liberty interest.  The Court agrees.  That assertion, however, is not enough to satisfy the second-prong of the qualified immunity test.  To satisfy his burden, Isengard must do more than identify a clearly established legal test and then allege that Beene violated it.  See Walker v. City of Orem, 451 F.3d 1139, 1151 (10th Cir. 2006).  He must show that the contours of the law are sufficiently clear that a reasonable official in Beene's position would have understood that his conduct violated Isengard's liberty-interest due-process rights.  See id.

The law that intra-governmental dissemination is not publication is sufficiently clear, but it does not establish what entities are considered governmental, and neither the Supreme Court nor the Tenth Circuit have reached the issue.  Moreover, the Tenth Circuit in Hannula v. Lakewood, 907 F.2d 129 (10th Cir. 1990), has stated: "We do not require government officials to predict future legal developments."  Id. at 131.  See Woodward v. City of Worland, 977 F.2d 1392, 1404 (10th Cir. 1992)(holding that non-supervisory public employees were entitled to qualified immunity because there was "no case law clearly establishing that a non-supervisor can be liable under §1983").  Isengard has not presented evidence that it was unreasonable for Beene to believe that the SILC was a governmental body, nor that he believed that he was discussing the audit in a public forum.

The Court finds that Isengard has failed to meet his burden to presented sufficient evidence to satisfy the two-pronged burden to overcome qualified immunity and has not met the four-part test

showing that Beene violated his liberty interest.  The Court finds that Beene is therefore entitled to qualified immunity protection and partial summary judgment as a matter of law on Isengard's third claim.

**IT IS ORDERED** that Defendant Gary Beene's Motion for Partial Summary Judgment on Qualified Immunity Grounds is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Maureen A. Sanders
Duff H. Westbrook
Sanders & Westbrook, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Mark T. Baker
Long Pound & Komer, P.A.
Santa Fe, New Mexico

 -- and --

John S. Stiff
Ann L. Keith
John S. Stiff & Associates, LLC
Albuquerque, New Mexico

    *Attorneys for Defendants New Mexico Public*
      *Education Department, Division of Vocational*
      *Rehabilitation, Gary Beene, and Celestino Jaramillo*

John S. Stiff
Ann L. Keith
John S. Stiff & Associates, LLC
Albuquerque, New Mexico

    *Attorneys for the Defendant Gary Cordova*