**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHRIS ISENGARD,

       Plaintiff,

vs.                                                                      No. CIV 08-0300 JB/RLP

NEW MEXICO PUBLIC EDUCATION
DEPARTMENT, DIVISION OF VOCATIONAL
REHABILITATION, and GARY BEENE, in his
individual capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Reconsideration and Clarification of a Portion of its June 16, 2009 Memorandum Opinion and Order (Doc. 75), filed July 27, 2009 (Doc. 88); and (ii) the Plaintiff's Motion for Leave of Court To File Amended Complaint, filed July 27, 2009 (Doc. 89). The primary issues are: (i) whether Plaintiff Chris Isengard may recover close-out costs and expenses as part of his claim for damages; and (ii) whether the Court should permit Isengard to amend his Complaint to assert a claim for breach of section 8 of his contract. The Court will grant the motion for reconsideration and consider the merits of Isengard's claim for close-out costs. Though the Court finds that Isengard properly pled his claim for damages, which included close-out costs within the damages figure, the Court finds that the contract forecloses Isengard's ability to claim close-out costs. Because the Court finds that Isengard may not claim damages for close-out costs, the Court will deny Isengard's motion to amend in part. The Court, however, finds that Isengard may amend to assert a breach of section 8 of his contract and thus will grant Isengard's motion to amend in part.

## FACTUAL BACKGROUND

Isengard was an independent contractor for the New Mexico Public Education Department's Division of Vocational Rehabilitation ("DVR") from January 1999 to October 2006.  Pursuant to his contract with the State, he was responsible for providing administrative support for the New Mexico State Independent Living Council ("SILC") and effectively served as that body's executive director.  See State of New Mexico Department of Education Division of Vocational Rehabilitation Professional Services Contract #05-644-1000-0019 at 1 (dated October 4, 2004), filed October 15, 2008 (Doc. 43-3)("Contract").  In return, he received payment for his services and reimbursement for expenses that he paid out as the SILC's administrator.  See id. at 2.

In May 2004, Isengard was informed that his contract with DVR would be audited.  See Complaint for Breach of Contract and Violation of Civil Rights  ¶ 14, at 3, filed in federal court March 20, 2008 (Doc. 1-2)("Complaint").  The Office of Inspector General with Defendant New Mexico Public Education Department ("NMPED") conducted the audit.  See Complaint ¶ 20, at 4. Celestino Jaramillo, the social community service coordinator with the DVR, notified Isengard of the results of the draft audit and gave him until October 18, 2006 to rebut the draft audit preliminary findings, which asserted that Isengard has more than $75,000.00 in unsupported and questioned costs under his contract with DVR.  See Complaint ¶ 23, at 4-5.

Isengard's contract with the DVR provided that either party could terminate it "for any reason whatsoever upon written notice delivered to the other party at least 10 days prior to the intended date of termination."  DVR's Motion for Partial Judgment on the Pleadings Exhibit A, State of New Mexico Department of Education Division of Vocational Rehabilitation Professional Services Contract at 3 (signed Sept. 10, 2004), filed Jan. 20, 2009 (Doc. 56-2).  The DVR notified Isengard by written notice on October 6, 2006 that his contract was terminated effective October 20,

2006.  See Motion at 4.  Isengard received notice of the termination of his contract by registered mail on October 9, 2006.  See Statement of Chris Isengard ¶ 4, at 2 (executed May 28, 2009), filed May 28, 2009 (Doc. 73-2).  Isengard alleges that the DVR and Beene have refused to pay him approximately $25,000.00 for work performed and billed under Isengard's contract. See Complaint ¶ 30, at 6.

## PROCEDURAL BACKGROUND

Isengard originally brought this lawsuit in state court, alleging three counts: (i) breach of contract, see Complaint ¶¶ 32-35, at 6-7; (ii) violation of his First-Amendment rights, see id. ¶¶ 36-40, at 7; and (iii) violation of his liberty interest, see id. ¶¶ 41-45, at 7-8.  On March 20, 2009, the Defendants removed the case to the United States District Court for the District of New Mexico. See Notice of Removal at 1, filed March 20, 2009 (Doc. 1).  In his Complaint, Isengard sets forth the Defendants' actions giving rise to the breach-of-contract claim.  Isengard alleges that, as a result of the Defendants' actions, he suffered compensatory and consequential damages.  Isengard specifically requests consequential damages.  See Complaint ¶ 35 at 6.

In its Memorandum Opinion and Order, filed June 16, 2009 (Doc. 75), the Court limited Isengard's breach-of-contract claim to the worth of the work he performed under the contract before its termination.  The Court recognized that Isengard seeks damages of approximately $25,000.00 under his breach-of-contract claim.  The Court also found that, because Isengard had not pled a separate allegation for close-out damages, he did not have a claim for those damages.  Specifically, in footnote 2, on page 19 of its opinion, the Court stated:

> At the hearing, Isengard argued that the DVR breached its contract by not paying him for costs and expenses that he incurred in closing out the contract.  Isengard did not make it clear whether these close-out damages were part of the $25,000 or whether they represent a separate set of damages.  The Court has carefully reviewed that Complaint and has not found any allegations of such damages.  Given that the

-3-

> Complaint does not allege such damages, the Court finds that Isengard has not stated
> a separate claim for costs and expenses related to closing out his contract.

See Memorandum Opinion and Order at 19 n. 2, filed June 16, 2009 (Doc. 75).

Isengard brings this motion to request that the Court reconsider and clarify, and reverse, this portion of its decision that he cannot recover close-out costs as part of his consequential damages unless such damages are specifically pled or set forth in a separate cause of action. Isengard states that close-out costs are included in the $25,000.00 estimated breach-of-contract damage claim set forth in his Complaint. Specifically, Isengard contends that consequential damages in this case include the cost of closing-out the contract.

Isengard asks the Court to reconsider its June 16, 2009 Memorandum Opinion and Order to the extent that it could be interpreted to prevent him from seeking close-out expenses as damages, and to reverse its determination that he is precluded from seeking specific incurred costs unless they had been specifically pled or were set forth in a separate cause of action. Isengard asks the Court to allow him to pursue a claim for close-out costs in this proceeding.

The DVR opposes the motion for reconsideration.[1] On August 7, 2009, the DVR filed its response to Isengard's motion for reconsideration. See Defendant Division of Vocational Rehabilitation's Response to Plaintiff's Motion for Reconsideration and Clarification of a Portion of June 16, 2009 Memorandum Opinion and Order (Doc. 90)("DVR Response"). The DVR opposes Isengard's motion because it believes that the Court's discussion of his breach-of-contract claims in its June 16, 2009 order tracked the way Isengard described those claims in his Complaint and in his response to the DVR's motion for partial judgment on the pleadings, and there is thus no reason

---

[1] Only the DVR only, rather than all remaining Defendants, offered the response because the DVR was the only party to Isengard's contract and the only Defendant that can be sued on a breach-of-contract claim.

-4-

to reconsider the Court's conclusions.  See DVR Response at 2.  The DVR also argues that, if the Court reverses its determination, it will run afoul of the termination clause in Isengard's contract with the DVR to the extent Isengard's references to close-out costs and consequential damages relate to the work and expenses he incurred after the DVR cancelled his contract.  The DVR contends that Isengard's contract limited its obligations to those incurred before termination, and barred claims for post-termination work and expenses.

In his reply, Isengard contends that the DVR incurred costs in closing out the contract when it entered into the contract with Isengard.  See Plaintiff's Reply to Defendant DVR's Response to Plaintiff's Motion for Reconsideration and Clarification of a Portion of June 16, 2009 Memorandum Opinion and Order at 1, filed August 24, 2009 (Doc. 93)("Reply").  Isengard argues that although the close-out costs themselves may not have been incurred until after the DVR terminated the contract, the DVR incurred the obligation to pay Isengard for those expenses at the initiation of the contract, and therefore the termination clause does not bar recovery of such expenses.  See id. Isengard refers to a United States Office of Management and Budget Circular issued to agencies receiving federal awards, see OMB Circular A-87, filed August 25, 2009 (Doc. 97-2), and argues that the principles and standards set forth in the circular apply to the DVR because the United States Department of Education gave the DVR an award of federal monies under Title I of the Rehabilitation Act, which supports the SILC, see Reply at 2.  Isengard contends that the DVR's termination of his contract was a termination of a sub-award, and that Circular A-87 allows recovery of expenses incurred in the termination and settlement of sub-awards.  Isengard argues that the provisions in Circular A-87 show that the DVR incurred the legal obligation to reimburse Isengard for close-out costs at the time it entered into its contract with him.   See Reply at 2-3.

At the hearing on November 20, 2009, the Court noted that it was not apparent from the face

of the Complaint that Isengard had included close-out costs in the $25,000.00 claim for damages. <u>See</u> Transcript of Hearing at 3:17-22 (taken November 20, 2009)("Tr.")(Court).[2]  Duff H. Westbrook, Isengard's attorney, argued that Isengard incurred the expenses at issue after the termination of the contract, but the DVR incurred the obligation to pay the expenses before the termination of the contract.  <u>See</u> Tr. at 6:9-13 (Westbrook).  He argues that there is a distinction between obligations incurred and expenses incurred, and that Isengard's contract speaks in terms of limiting the State's liability to obligations already incurred and not to expenses.  <u>See id.</u> at 6:13-20 (Westbrook).  Mark T. Baker, the DVR's attorney, conceded in the hearing that, if a complaint states that the plaintiff is entitled to $25,000.00 in damages, notice pleading requirements under rule 8 and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), are satisfied, even though the plaintiff has not broken down the damages figure into specific claims.  <u>See</u> Tr. at 12:20-13:9 (Court, Baker).  The DVR argued in the hearing that there is nothing in the contract with Isengard that would have expressed the State's desire to assume an obligation to pay for fees that Isengard incurred in responding to the audit after his contract was terminated.  <u>See</u> Tr. at 17:1-7 (Baker).  The DVR argues that, though the State could have added a section stating it would assume such obligations, it did not do so, and there is no language in the contract that states otherwise.  <u>See</u> Tr. at 16:25-17:10 (Baker).

Mr. Westbrook also clarified that, in moving to amend the Complaint, Isengard is not attempting to reassert a claim for breach of the covenant of good faith and fair dealing, but is attempting solely to assert a claim for breach of section 8 of his contract, which specifies the audits to which his contract was subject.  <u>See</u> Tr. at 7:8-19 (Westbrook).  Isengard argues that the DVR

_____

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

breached the contract when it conducted an audit that was contrary to what the contract allowed. See Tr. at 9:14-19 (Westbrook).  He asserts that, if the reason his contract was terminated is because of a breach of a different provision of the contract, the DVR is liable for damages flowing from the breach of the contract.  See Tr. at 22:23-23:2 (Westbrook).  Isengard argues that the DVR incurred liability for breach of section 8 at the time of the breach -- when the audit was conducted -- which occurred before the DVR terminated Isengard's contract.  See Tr. at 24:8-11 (Westbrook).  He asserts that the damage he suffered was the loss of the contract, which flowed directly from the breach of section 8.  See Tr. at 25:20-23 (Court, Westbrook).

The DVR argued that, even though a jury might find that section 8 was breached with a bad audit, the termination clause --  permitting the DVR to terminate the contract for any reason -- cuts Isengard off from recovering money that he would have received if he had continued working.  See id. at 18:7-16 (Baker).  Mr. Baker conceded that a termination clause, even one that permits termination for any reason, does not eliminate the ability and possibility of a breach of contract.  See Tr. at 17:15-23 (Court, Baker).

## LAW REGARDING MOTIONS TO DISMISS

In Conley v. Gibson, 355 U.S. 41 (1957), the Supreme Court of the United States enunciated a standard that courts should not dismiss complaints for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. at 45-46.  In its decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court overruled this longstanding interpretation of rule 8 of the Federal Rules of Civil Procedure and supplanted that requirement with a new requirement that a plaintiff plead enough facts to "state a claim that is plausible on its face."  Id. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.");

Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)("The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss.")(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 570).

A Complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citation omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (emphasis in original).

Rule 8 requires that the plaintiff must show that she or he is entitled to relief, see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), and requires the plaintiff to plead a demand for that relief, see Fed. R. Civ. P. 8(a)(3).   Rule 8 does not, however, require damages to be pled with specificity, nor does it require a party to sue for a specific amount of damages.  See Fed. R. Civ. P. 8(a)(3).  In Travelers Cas. & Sur. Co. of Am. v. A.G. Cullen Constr., Inc., Civ. No. 07-0765, 2008 U.S. Dist. LEXIS 89187 (W.D. Pa. Nov. 4, 2008), the district court held that the defendant's argument in his rule 12(b)(6) motion to dismiss, that the plaintiffs' claims should fail because their damages claim was not sufficiently specific, was without merit.  2008 U.S. Dist. LEXIS 89187, at *35-36.  "It is unclear whether the federal courts should require a party to request specific damages, however, Rule 8(a)(3) has been read so narrowly as to require only the assertion of the nature of relief

alleged." 2008 U.S. Dist. LEXIS 89187, at *35-36 (citing 5 C. Wright & A. Miller, Fed. Practice and Procedure § 1259, at 519-22 (3d ed. 2009)).

## LAW REGARDING MOTION FOR RECONSIDERATION

Every order short of a final decree is subject to reopening at the district judge's discretion. See Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). A district court has discretion to revise interlocutory orders before the entry of a final judgment. See Trujillo v. Bd of Educ. of the Albuquerque Pub. Schs., 212 Fed. Appx. 760, 765 (10th Cir. 2007). When the plaintiff seeks to obtain reconsideration of a non-final order, his or her motion for reconsideration is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." Wagoner v. Wagoner, 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991). A motion for reconsideration is an "inappropriate vehicle[ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Id. (citation omitted).

## NEW MEXICO PLEADING REQUIREMENTS

Courts in New Mexico have not adopted the pleading requirements of the Federal Rules of Civil Procedure that the Supreme Court of the United States enunciated in Bell Atlantic Corp. v. Twombly and in Ashcroft v. Iqbal.[3] Rather, New Mexico courts require a "short and plain statement

_____

[3] Bell Atlantic Corp. v. Twombly has been cited only once by a New Mexico state court, and not for a pleadings requirement, but rather in discussing the Sherman Act. See Romero v. Philip

of the claim showing the pleader is entitled to relief."  NMRA 1-008(A)(2).  See Lewis v. State

Human Servs. Dep't, No. 29,582, 2009 N.M. App. Unpub. LEXIS 353, at *3 (App. Oct. 5,

2009)(affirming the district court's dismissal for failing to identify elements of her claim for abuse

and quoting NMRA 1-008(A)).  The New Mexico Court of Appeals in State ex rel. Children, Youth

and Families Dept. v. Cosme V., 146 N.M. 809, 215 P.3d 747 (Ct. App. 2009), stated:

> In determining whether a complaint states a claim upon which relief can be granted,
> we assume as true all facts well pleaded.  In addition, a motion to dismiss a
> complaint is properly granted only when it appears that the plaintiff cannot recover
> or be entitled to relief under any state of facts provable under the claim.  Only when
> there is a total failure to allege some matter which is essential to the relief sought
> should such a motion be granted.  Moreover, a motion to dismiss for failure to state
> a claim is granted infrequently.  Las Luminarias of the N.M. Council of the Blind v.
> Isengard, 92 N.M. 297, 299-300, 587 P.2d 444, 446-47 (Ct. App.1978)(citations
> omitted).

146 N.M. 809, 215 P.3d at 751.  New Mexico courts also require the pleadings to contain:

> a demand for judgment for the relief to which the pleader claims to be entitled to
> receive. Relief in the alternative or of several different types may be demanded.
> Unless it is a necessary allegation of the complaint, the complaint shall not contain
> an allegation for damages in any specific monetary amount.

NMRA 1-008(A)(3).[4]

## LAW REGARDING MOTIONS TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides:

> A party may amend the party's pleading once as a matter of course at any time
> before a responsive pleading is served or, if the pleading is one to which no
> responsive pleading is permitted and the action has not been placed upon the trial

---

Morris, Inc., 145 N.M. 658, 665, 203 P.3d 873, 880 (Ct. App. 2008).  As of the issuance of this
opinion, no New Mexico state court opinions have cited to Ashcroft v. Iqbal.

[4] The New Mexico Supreme Court amended NMRA 1-008(A)(3) in 2007 to include the
sentence prohibiting an allegation for damages in a specific amount unless it is a necessary
allegation of the complaint.  See New Mexico Supreme Court Order 07-8300-16 (effective Aug. 1,
2007).

calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay. Furthermore, where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)(internal citations and quotations omitted). See Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc. and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court"). "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schools, No. CIV 05-1165 JB/RLP, 2007 WL 1306814, at * 2 (D.N.M. March 12, 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)). "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim." Burleson v. ENMR-Plateau Tel. Co-op., No. CIV 05-0073 JB/KBM, 2005 WL 3664299, at * 2 (D.N.M. September 23, 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

## **ANALYSIS**

Because Isengard seeks to obtain reconsideration of a non-final order, his motion for

-11-

reconsideration is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." Wagoner v. Wagoner, 938 F.2d at 1122 n.1. Isengard simultaneously filed a motion for leave to amend his complaint, both to add close-out costs to his claim for damages and to specify which sections of his contract he alleges were breached. Because the Court's decision on the motion for reconsideration affects part of the motion for leave to amend, the Court will address the motion for reconsideration first.

## I.    THE COURT WILL RECONSIDER FOOTNOTE 2 IN ITS JUNE 16, 2009 MEMORANDUM OPINION AND ORDER.

Isengard contends that the Court's decision erroneously applied rule 8's requirements, as the Supreme Court of the United States interpreted them in Bell Atlantic Corp. v. Twombly, 550 U.S. at 544, and Ashcroft v. Iqbal, 129 S. Ct. at 1937, to his breach-of-contract claim when the Court decided he had not sufficiently pled damages in the form of close out costs and expenses. See Motion at 1-2. Isengard asserts that he specifically pled consequential damages and thus the Court's ruling in footnote 2 of its Memorandum Opinion and Order, filed June 16, 2009 (Doc. 75), does not prohibit him from seeking his costs. See Motion at 2. Isengard also maintains that his claim for damages involves a question of law and thus the pleading standard set forth in Bell Atlantic Corp. v. Twombly and in Ashcroft v. Iqbal do not apply because the standards only apply to the pleading of factual matters. Isengard suggests that the Court's ruling that he is barred from seeking certain costs and expenses incurred in closing out his contract as a breach-of-contract damages unless those costs and expenses are specifically pled or set forth in a separate claim is in error. Specifically, Isengard contends that the Court's requirement that he plead with specificity each and every element of damages being sought as a result of the alleged breach of contract, or be foreclosed from

recovering such damages, was in error and should be reversed.

Isengard also points out, correctly, that New Mexico state rules of civil procedure governed the Complaint's adequacy at the time he filed it.  Isengard contends that it is unfair to hold his Complaint to a standard which did not apply to it at the time he filed it, at least without providing him an opportunity to amend his Complaint to comply with the Federal Rules of Civil Procedure's more stringent pleading requirements, as the Supreme Court of the United States has interpreted those requirements.

The Court largely agrees with Isengard.  Nothing in <u>Bell Atlantic Corp. v. Twombly</u>, or in the Supreme Court's subsequent decision in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), requires a plaintiff to specifically plead each and every element of damages with specificity.  Such a requirement would result in a near wholesale abandonment of the concept of notice pleading.  The Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u> and <u>Ashcroft v. Iqbal</u> require only that a plaintiff  plead sufficient facts to make his or her legal claim plausible.

The Court, in its June 16, 2009 Memorandum Opinion and Order, did not carefully distinguish between pleading facts to support a cause of action and the elements of a damages claim. Footnote 2 stated: "Given that the Complaint does not allege [close-out] damages, the Court finds that Isengard has not stated a separate claim for costs and expenses related to closing out his contract."  Memorandum Opinion and Order at 19 n.2.  Isengard's briefing on the motion for reconsideration has clarified for the Court that he was not attempting to assert a separate claim of relief, but rather that the $25,000.00 compensatory and consequential damage figure pled in the Complaint includes damages for consequential damages.  The Court finds that it is not necessary for Isengard to parse out his damages figure in order to satisfy the pleading requirements under rule 8. The DVR agrees.  <u>See</u> Tr. at 12:20-13:9 (Court, Baker).  The issue that remains before the Court,

however, is not whether the form of Isengard's pleadings preclude recovery of close-out costs, but rather, from a substantive standpoint, whether his contract with the DVR precludes recovery of close-out costs.  The Court and the parties at the hearing agreed that it would be desirable to use these two motions as vehicles to get this open issue resolved.

## II.    THE CONTRACT PRECLUDES ISENGARD FROM RECOVERING CLOSE-OUT COSTS AND EXPENSES.

Isengard contends that his contract was a sub-award of federal monies and that federal rules permit the recovery of close-out costs, and, thus, when he entered his contract with the DVR, the DVR incurred the obligation to pay him any close-out costs.  See Tr. at 4:15-25 (Westbrook). Isengard argues that the expenses were incurred after the termination of the contract, but that the DVR incurred the obligation to pay those expenses before the termination, specifically at the inception to the contract.  See Tr. at 6:9-20 (Westbrook).  The DVR argues that there is no language in its contract expressing a desire for the State to assume the obligation to pay for close-out costs, which it understands to include the expenses Isengard incurred in challenging the audit after his contract was terminated.  See Tr. at 16:22-17:10 (Baker).

The contract between Isengard and the DVR includes language establishing that, "[b]y such termination, neither party may nullify obligations already incurred for performance or failure to perform prior to the date of termination."  State of New Mexico Department of Education Division of Vocational Rehabilitation Professional Services Contract #05-644-1000-0019 at 3 (dated October 4, 2004)("Contract").  Both parties preserved their rights to enforce obligations already incurred before the termination date.  Though Isengard argues that the DVR incurred the obligation to pay expenses that would not arise unless and until Isengard's contract was terminated at the time the parties entered the contract, there is no language within the contract that expresses such an

-14-

obligation by the parties nor is there language from which to infer a desire by the State to pay expenses that would arise from closing-out the contract after its termination.

Isengard contends that OMB Circular A-87 governs his contract because his contract is a subaward of federal funds.  See Errata to Plaintiff's Reply to Defendant DVR's Response to Plaintiff's Motion for Reconsideration and Clarification of a Portion of June 16, 2009 Memorandum Opinion and Order, filed August 25, 2009 (Doc. 97-2).  Isengard's contract, however, states: "This is deemed a vendor contract for purposes of administration."  Contract Section 18 at 6.  Pursuant to OMB Circular A-133: "Vendor means a dealer, distributor, merchant, or other seller providing goods or services that are required for the conduct of a Federal program.  These goods or services may be for an organization's own use or for the use of beneficiaries of the Federal program."  OMB Circular A-133, § 105 at 6.  Section 210 of OMB Circular A-133 further clarifies that "the payments received for goods or services provided as a vendor would not be considered Federal awards," and also states that a vendor contract "[i]s not subject to compliance requirements of the Federal program."  OMB Circular A-133  § 210 at 10-11.  Because Isengard's contract is not an award, nor a subaward, as he contends, his argument that close-out costs are permissible under OMB Circular A-87 is unpersuasive and does not overcome the absence of any language in the contract imposing such an obligation on the State.  Moreover, even if OMB Circular A-87 applies to Isengard's contract, all it states is that a State may, with federal funds, pay close-out costs: "Settlement expenses including the following are generally allowable: (1) Accounting, legal, clerical, and similar costs reasonably necessary for: . . . (b) [t]he  termination and settlement of subawards."  OMB Circular A-87, Section 41(e).  OMB Circular A-87 does not mandate that a State pay close-out costs or that a State agree to pay close-out costs; it states that such costs are "generally allowable".  Id.  Accordingly, the contract language continues to be the language that governs the issue.

Upon careful review of Isengard's contract, the Court finds no provision which states that the State of New Mexico or the DVR are responsible for paying Isengard's close-out costs. Moreover, the Court is unclear on what costs Isengard considers "close-out costs," as he has not expressed to the Court what they include.  The DVR has speculated that they include costs Isengard incurred in defending against the audit after his contract was terminated.  See Tr. at 17:3-7 (Baker). Without explicit language to the contrary, the Court does not find that the State incurred the obligation to pay Isengard's close-out costs at the inception of the contract.  The express language of the contract preserves only claims for obligations incurred before the date of termination, and it does not contemplate compensating for work and expenses incurred after the contract already had been cancelled.  The Court, therefore, finds that the motion for reconsideration is granted; however, in addressing the merits of Isengard's claim for close-out costs, the Court finds Isengard is precluded from recovering such costs, either as part of an independently asserted claim or as part of his $25,000.00 claim for damages.

III.     **ISENGARD MAY AMEND HIS COMPLAINT TO THE EXTENT THAT HE ASSERTS A BREACH OF SECTION 8, BUT MAY NOT ASSERT DAMAGES FOR TERMINATION OF THE CONTRACT THAT MAY HAVE FLOWED FROM THAT BREACH.**

Isengard also moves the Court to grant him leave to file an amended complaint which specifically pleads close-out costs as an element of damages being sought under his breach of contract claim, and which clarifies the specific breaches of contract that Isengard alleges and the damages that flowed from those breaches.  See Plaintiff's Motion for Leave of Court to File Amended Complaint, filed July 27, 2009 (Doc. 89)("Motion to Amend").  Specifically, Isengard seeks to include a claim of breach of Section 8 of his contract, which states the types of audits to which his contract was subject.  As the Court has reconsidered the issue of close-out costs and found

-16-

that Isengard is precluded from claiming them as damages, the Court will deny his request to amend in that regard.  The Court will grant, however, Isengard's motion to amend to add a claim for breach of Section 8 of his contract, but will not permit Isengard to plead that the damages include money he would have received but for the termination of his contract.

The DVR argues in its response to Isengard's motion to amend that Isengard is attempting to add a covenant of good faith and fair dealing claim to his complaint, which the Court previously considered and rejected.  See Defendant Division of Vocational Rehabilitation's Response to Plaintiff's Motion for Leave of Court to File Amended Complaint, filed August 7, 2009 (Doc. 91)("Response to Motion to Amend").  At the hearing, Mr. Westbrook clarified that Isengard is not attempting to reassert a claim for breach of covenant of good faith and fair dealing, and provided the Court and Mr. Baker with a proposed amended complaint free from any claims that may be construed as such.  See Tr. at 7:8-19 (Westrbook).  Mr. Baker conceded that the new proposed complaint provided by Mr. Westbrook mooted his argument on the good-faith-and-fair-dealing issue.  See Tr. at 22:2-7 (Court, Baker).

The DVR also argues that permitting Isengard to amend his complaint to assert a breach of section 8 of his contract would require improperly overriding the express right the parties had under the contract to terminate for any reason with ten days notice.  See Response to Motion to Amend at 1.  The DVR argues that, because the claim would be futile, the Court should deny the motion to amend.  See Response to Motion to Amend at 1 (citing Duncan v. Mgr., Dep't of Safety, 397 F.3d 1300, 1315 (10th Cir. 2005)).  The DVR also expresses concern that permitting Isengard to add a claim for breach of section 8 of his contract opens the door for him to recover damages resulting from the termination of his contract.  See id. at 2.

Rule 15 states that leave to amend "shall be freely given when justice so requires."  Fed. R.

Civ. P. 15(a).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  Frank v. U.S. West, Inc., 3 F.3d at 1365-66.  Isengard contends that there has been no undue delay, as he moved to amend shortly following the Court's June 16, 2009 decision, which dismissed his claim for breach of the covenant of good faith and fair dealing.  See Motion to Amend at 3.  Isengard also argues it was not until the deposition of Gary Beene that he learned that the findings of the audit conducted at the direction of the DVR were the reason for his contract's termination.  See Motion to Amend at 3.  The Court agrees that there has not been an unreasonable delay which would foreclose leave to amend.  The Court also does not find that the proposed amendment poses undue prejudice upon the DVR, as Isengard intends to assert a more specific version of a breach-of-contract claim he previously asserted and thus the DVR was already on notice.  Isengard has not previously amended his Complaint and, thus, there are no prior failures to cure deficiencies by amendments previously allowed.  Though the DVR argued in its response that the proposed amendment is futile, at the hearing, Mr. Baker conceded that the termination clause, even one that permits termination for any reason, does not eliminate the ability and possibility of a breach of contract.  See Tr. at 17:15-23 (Court, Baker).  The Court finds that granting Isengard leave to amend his complaint is appropriate, and will permit him to amend to add a claim for breach of section 8 of the contract.

Though the Court will grant Isengard's motion to amend and allow him to assert a claim for breach of section 8, Isengard may not make futile amendments, including assertions of damages for close-out costs, and may not back-door a claim for damages that arose after the termination of the contract.  The Court previously found the termination clause in Isengard's contract to be valid, free from fraud or unconscionable conduct, and binding upon all parties.  See Memorandum Order and

Opinion at 15.  Moreover, the Court previously permitted Isengard's claim for $25,000.00 in damages because the Complaint asserted that they did not arise out of the termination, nor depend on any allegations that the breach of contract proximately caused the termination.  See Memorandum Order and Opinion at 18.  Rather, the Court found that the allegations in the Complaint represented an independent basis for recovering under the contract.  See Memorandum Order and Opinion at 18.  Consistent with the Court's earlier decision to not dismiss Isengard's Complaint in its entirety, the Court will permit Isengard to amend to specify a breach of section 8 but will not permit him to now assert damages from termination of the contract.

　　　Isengard's strongest argument is that he is entitled to all consequential damages which flow from a breach of the contract before it was terminated, and that the breach of section 8, which occurred before the termination, entitles him to all consequential damages that flow from that breach, including those which arise from the termination.  While there is a logic to Isengard's argument, his interpretation effectively negates the section allowing the State to terminate for any reason whatsoever. See Contract at 3; Smith v. Price's Creameries, Div. of Creamland Dairies, Inc., 98 N.M. 541, 546, 650 P.2d 825, 830 (1982)("Where a contract provides for a manner by which termination can be effected, those provisions must ordinarily be enforced as written.")(citation omitted).  "[A]ny reason whatsoever" means any reason, including a bad reason.  See  Smith v. Price's Creameries, Div. of Creamland Dairies, Inc., 98 N.M. at 546, 650 P.2d at 830 ("The motivation of a party in cancelling a contract which by its terms is terminable at will by either party, is immaterial.").  "Any reason" includes a reason developed from a prior breach of the contract, such as conducting an improper audit.  The Court must construe the contract, if possible, to give every phrase meaning.  See Colorado Milling & Elevator Co. v. Chicago, R.I. & P.R. Co., 382 F.2d 834, 836 (10th Cir. 1967)(stating "a contract should be interpreted as a harmonious whole to effectuate

the intention of the parties, and every word, phrase or part of a contract should be given a meaning and significance according to its importance in the context of the contract.")(citing <u>Frankfort Oil Co. v. Snakard</u>, 279 F.2d 436, 441 (10th Cir. 1960); <u>Utex Exploration Co. v. Garwood</u>, 246 F.2d 547, 550 (10th Cir. 1957); <u>Phillips Petroleum Co. v. McCormick</u>, 211 F.2d 361, 364 (10th Cir. 1954)); <u>City of Albuquerque v. BPLW Architects & Eng'rs., Inc.</u>, 2009-NMCA-81, ¶ 14, 213 P.3d 1146, 1151 (Ct. App. 2009)(stating that the court should "apply the general rules of contract construction in determining the meaning of the language used by the parties.  This requires us to construe the contract as a harmonious whole and to give every word and phrase meaning and significance according to its importance in the context of the whole contract.")(internal quotation marks and citation omitted).  The plain meaning of Isengard's contract does not foreclose damages altogether that may remedy the breach of a separate provision of the contract.  Rather, the contract limits those damages to "obligations already incurred for performance or failure to perform prior to the date of termination."  Contract at 3.  Construing the contract as a harmonious whole, Isengard may seek damages flowing from his allegation of a breach of section 8, insofar as those damages are constrained by costs he incurred before his contract was terminated.

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration and Clarification of a Portion of its June 16, 2009 Memorandum Opinion and Order is granted and Plaintiff's Motion for Leave of Court To File Amended Complaint is granted in part and denied in part.  The Court has reconsidered its opinion and will not require close-out damages to be specifically pleaded in the Complaint, but the Court will not allow the Plaintiff Chris Isengard to seek or secure such costs as damages.  The Court will allow Isengard to amend his Complaint to add a claim for breach of section 8 of the State of New Mexico Department of Education Division of Vocational Rehabilitation Professional Services Contract #05-644-1000-0019, but will not allow Isengard to

seek damages from his termination as a result of any breach of section 8.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Maureen A. Sanders
Duff H. Westbrook
Sanders & Westbrook, P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Mark T. Baker
Long Pound & Komer. P.A.
Santa Fe, New Mexico

 -- and --

John S. Stiff
Ann L. Keith
John S. Stiff & Associates, LLC
Albuquerque, New Mexico

     *Attorneys for Defendants New Mexico Public*
       *Education Department, Division of Vocational*
       *Rehabilitation, Gary Beene, and Celestino Jaramillo*

John S. Stiff
Ann L. Keith
John S. Stiff & Associates, LLC
Albuquerque, New Mexico

     *Attorneys for the Defendant Gary Cordova*

-21-